WOLF, J.,
Dissenting.
The trial court incorrectly entered a summary judgment in favor of appellee NHIC because (1) issues of genuine material fact exist concerning whether NHIC charged an incorrect premium, thereby requiring NHIC to follow the procedures outlined in section 627.7282, Florida Statutes (“the incorrect premium statute”); and (2) the “incorrect premium statute” is applicable in all situations where an incorrect premium is charged based on an amendment to material information in the original insurance application, thereby necessitating a premium be readjusted in accordance with the insurer’s rate filing.
Thus, it is unnecessary for this court to reach the broader issue determined by the majority to be dispositive: whether the “incorrect premium statute” applies to renewals. The vast majority of renewals do not require amending material information in the original insurance application.
The following excerpt of an affidavit of Gerald Allen Smith, appellant’s father, contains critical information pertinent to the issue before this court:
2. In or about August 2007, I obtained insurance on behalf of my son, Gerald Austin Smith, on a Ford F-150 truck. I obtained this insurance with New Hampshire Indemnity Company, through the A -I- American Casualty Insurance Company, Inc. agency.
[[Image here]]
4. The policy obtained in August 2007 was valid for six months. Prior to the expiration of that policy, I notified Holly Markey that the named insured, my son, Gerald Austin Smith, had moved to Jacksonville, Florida from Gainesville (where the policy had originally been written). I was advised by Ms. Markey that this might impact the premium for the new policy and that I should wait until the change took effect before paying the premium. I notified Ms. Mar-key of the address change on January 25, 2008. She confirmed the change January 28, 2008. Attached hereto as Exhibit A is a notice from New Hampshire indicating the change was effective January 29, 2008.
5. On February 6, 2008, I visited the offices of A-I- American Casualty Insurance, Inc., in Clermont, Florida and personally spoke with Holly P. Markey. Ms. Markey logged on to a computer system and verified the amount of premium, as well as the address change. The address change was in the computer and the premium due was indicated as $926.14. I paid the full amount of the premium based upon Ms. Markey’s representations that was the correct premium.
6. At all times during the life of this policy, I paid the premium and dealt with Ms. Markey.
7. I had no notice that there was purportedly additional premium due and, had I known of the substantial increase of the premium, I would have sought other insurance.
[[Image here]]
9. At all material times while I dealt with Holly Markey, it was my understanding that she was an authorized rep *435 resentative of New Hampshire Indemnity Company and/or its parent company, American Insurance Group, due to the fact that she had in her possession applications for insurance bearing the name of AIG and/or New Hampshire Indemnity; she bound coverage on the part of New Hampshire Indemnity and she collected premiums on behalf of New Hampshire Indemnity.
The above facts, if true, demonstrate that a representative of NHIC charged and accepted insufficient funds from appellant’s father as full payment of the premium for the coverage appellant was seeking. Thus, contrary to the trial court’s ruling, genuine issues of material fact exist as to whether “a policyholder has been charged a premium that is incorrect....” § 627.7282(1), Fla. Stat.
Instead of reaching the factual issues, the majority would affirm as a matter of law based on its determination that section 627.7282 only applies to situations in which an insurer initially sets an incorrect premium at the time an insured makes his initial application for insurance coverage, and thus, does not apply to renewals or amendments. This analysis is incorrect for several reasons.
First, the majority bases their opinion on a purported plain reading of the statute, yet they effectively rewrite the statute to bolster their conclusion that section 627.7282 does not apply. Specifically, they impliedly insert the word “initial” before the word “application,” assuming the statute reads, “charged a premium that is incorrect for the coverage set forth in the initial insurance application.” The statute itself does not contain the term, and its lack of the use of the term renders the statute ambiguous as to its application to requests for amended coverage beyond the initial period.
Second, the ambiguity of the statute requires this court to consider the legislative purpose behind its enactment, and that purpose is not furthered by the majority’s interpretation. See Samples v. Fla. Birth-Related, Neurological, 40 So.3d 18, 22 (Fla. 5th DCA 2010) (reiterating when a statute is ambiguous, a court should look to legislative intent). In enacting section 627.7282, the Legislature was attempting to protect consumers from a growing practice among insurance companies of misquoting a premium and later cancelling the policy after the premium was exhausted prior to the policy’s end date. Ch. 86-252, Laws of Fla. (1986). In cancelling this way, insurers were keeping all premiums paid and not offering consumers a refund or a chance to seek coverage from another insurer. Id. The Legislature was concerned consumers were agreeing to coverage based on misquoted premiums and were then left without the option to shop around in light of the new quote and seek return of the premium.[2] As illustrated by *436 the underlying case, the same evil sought to be remedied by the Legislature occurs in policy periods beyond the initial period. Here, appellant’s father was charged a premium, paid it and left the office believing his son was covered. When NHIC determined a mistake had occurred, it kept the entire premium paid but cancelled the policy prior to the agreed-upon end date. This situation is the exact evil sought to be remedied by the statute and it applies equally to all periods of coverage, not just the initial period. Thus, the majority’s implicit insertion of the word “initial” into the stattite defeats the clear legislative intent.
Third, contrary to the majority’s opinion, the' triggering event under the incorrect premium statute is not connected to whether the'policy is being renewed. Instead, the trigger for the requirement to send the incorrect premium letter is the quoting of an incorrect premium based on a change or amendment to the information provided in the original application.
Specifically, the statute requires notification to a consumer when an incorrect premium is charged “for the coverage set forth in the insurance application.” § 627.7282(1), Fla. Stat. Here, based on the policy in the record, appellant was under a continued duty to inform NHIC of any “material” changes to the information provided in the original application. Further, the policy specifically noted a change to an address constituted a material change that may affect premium costs. In fact, at oral argument, appellee acknowledged the change of address amounted to a change to the information contained in the original application which would necessitate an alteration in premium (effectively constituting a new or amended application for insurance coverage). Thus, in order for NHIC to enforce its continuing re-' quirement for material disclosure, NHIC relies on the consumer’s agreement to amend the information given in the original application when necessary. It seems unfair to place this continuing duty on the consumer to amend an application, yet forgive NHIC the continuing requirement to provide proper notice of changes to quoted premium based on those amendments.
Last, the term “renewal” has no bearing on the analysis of the statute. A renewal of an insurance policy is a contract based on the same conditions as were contained in the original policy. See U.S. Fire Ins. Co. v. S. Sec. Life Ins. Co., 710 So.2d 130, 132 (Fla. 5th DCA 1998) (holding a “nonre-newal” is a policy with material changes in terms and conditions from the prior policy, and the insurer’s decision to eliminate slander and libel coverage amounted to a *437 nonrenewal) (citing Hartford Accident & Indemnity Co. v. Sheffield, 375 So.2d 598 (Fla. 3d DCA 1979)). Because this case involves an amendment to a contract which changes a material condition of the original policy, it does not involve a renewal. For the foregoing reasons, the summary judgment was entered in error and the case should be remanded to the trial court for further proceedings.

. The chapter law enacting section 627.7282 titled the statute as follows:
An act relating to insurance; ..., providing for a procedure with respect to private passenger motor vehicle insurance policyholders who have been charged an incorrect premium relating to the assessment of additional premiums; providing an effective date.
Ch. 86-252, Laws of Fla. In addition, the House of Representative and Senate Committee on Health Care and Insurance Staff Analysis and Economic Impact Statements provided as a purpose for the statute:
A. Present Situation:
As a result of insurers re-rating motor vehicle insurance policies and discovering inaccurate or incomplete information in an application for insurance, payment of additional premiums have been required by insurers for coverage for the period established in the insurance application. Currently, it is the practice of some insurers to shorten the policy period to *436 correspond to the amount of the initial premium paid if the policyholder does not respond to a demand for additional premiums. This has created gaps in coverage for some policyholders who, for various reasons, were not aware of the request for addition[al] premiums.
B. Effect of Proposed Changes:
Senate Bill 768 requires that upon a determination by an insurer that a policyholder has been charged a premium that is inadequate for the coverage set forth in the insurance application, the insurer must immediately notify and inform the policyholder of the additional premium due to the insurer. The policyholder then has 10 days, or longer if specified by the insurer, in which to either pay the additional premium or cancel the policy and demand a refund of the unearned premium. If the policyholder fails to respond within the allotted time, the insurer must cancel the policy, effective no earlier than 14 days after the date of the notice, and return any unearned premium to the insured. The amount of the unearned premium shall be calculated on a pro rata basis. The bill thereby prohibits private passenger automobile insurers from unilaterally altering or modifying the expiration date of a policy due to non-payment of a demand for additional premium, except as provided above.