TORPY, C.J.,
concurring in part and dissenting in part.
My colleagues hold for the first time in Florida that a garden-variety terminable-at-will contract violates the statute of frauds, as a matter of law, even though the parties could have fully performed it within one year or cancelled it at any time. The fact that the contractual relationship lasted more than a year is completely irrelevant. The contract was either valid or invalid on the day it was made. Yates v. Ball, 132 Fla. 132, 181 So. 341, 344-45 (1937) (fact that performance exceeded one year is not material to determination of whether contract violated statute of frauds). Nor does the fact that the contract was between two romantically involved people bear on the legal issue, because that relationship was itself terminable-at-will. Accordingly, I dissent.[3]
Browning and Poirier entered into an oral agreement in 1993 to share lottery winnings. Browning testified that the oral agreement was that “[w]e would play [the lottery] together and we would buy lottery tickets and we would split it.” When pressed by defense counsel as to the actual words of the agreement, Browning reiterated that the two “would buy tickets and we would split the money.” No other words were spoken concerning the substance of the agreement. The parties performed the agreement by travelling together to buy tickets (locally and in other counties and states), entering the stores together, and purchasing tickets. Although they never won any jackpots, they did win small amounts, which they would together reinvest in more tickets.
*150 Shortly before the purchase of the ticket that is at the heart of this dispute, Browning and Poirier discussed over dinner their desires to purchase tickets in the “Firecracker” drawing. After dinner, they went to a convenience store together to purchase tickets. As had been their past practice, they stood in line and purchased tickets in separate transactions to avoid sequentially numbered tickets. Browning handed Poirier the twenty dollars to buy the tickets she purchased. The winning ticket was in the batch procured by Poirier. Poirier retained the winning ticket and refused to split the winnings with Browning when he confronted her, culminating in this action.
The majority states that this lottery pooling agreement “was to last as long as [Browning and Poirier] remained romantically involved.” It then concludes that, because the parties intended to remain in the romantic relationship for more than one year, the agreement to pool lottery winnings violates the statute of frauds. This conclusion involves both a misinterpretation of the evidence and a misapplication of the law. As for the evidence, the majority relies on the following testimony by Browning to tie the duration of the agreement to the duration of the relationship:
Q: Sir, you acknowledge that this agreement that you’re saying you had with [Poirier] was only effective as long as you still had a relationship with her, correct?
A: Yeah, while we was [sic] together. We was [sic] together, yes.
(Emphasis added). This testimony was merely Browning’s acknowledgement that the end of the relationship would end the lottery pooling agreement. Browning did not say that the lottery pooling agreement must continue for as long as the parties remained romantically involved, only that the agreement would end at that time. Nothing in the lottery agreement precluded either party from terminating the lottery agreement, even before the end of the romantic relationship.
Even if the agreement was that they would play the lottery for as long as they stayed together, that does not support the conclusion that the agreement falls within the statute of frauds as one “not to be performed” within one year. Instead, such an agreement would be one of indefinite term that might or might not be performed within one year. The “not to be performed” language of the statute is expressed in the negative — meaning that the terms of the contract must contain a “negation of the right to perform it within the year” to bring the contract within the statute. Ark. Midland Ry. Co. v. Whitley, 54 Ark. 199, 15 S.W. 465, 466 (Ark.1891) (cited in L.S. Tellier, Annotation, Statute of Frauds Against Oral Contracts Not to be Performed Within Year as Applicable to Contracts Susceptible by its Terms, or by Construction, of Performance Within Year, Where Performance Within that Time is Improbable or Almost Impossible, 129 A.L.R. 534 (1940)). Accordingly, the “well-settled” rule is that only contracts that cannot be performed within one year are within the ambit of the statute. If it can be performed within one year, then it is not rendered unenforceable under the statute, even if actual performance takes longer than one year. As Williston states:
It is well settled that the oral contracts made unenforceable by the statute because they are not to be performed within a year include only those which cannot be performed within that period. A promise which is not likely to be performed within a year, and which in fact is not performed within a year, is not within the statute if at the time the contract is made there is a possibility in *151 law and in fact that full performance such as the parties intended may be completed before the expiration of a year.
9 Richard A. Lord, Williston on Contracts § 24:3 (4th ed. 2012) (bold emphasis added).
The majority mistakenly concludes that, when parties to a contract believe that performance will likely take more than one year, the statute is implicated. This interpretation ignores the plain language of the statute, which only brings within its ambit those contracts that cannot be performed within that time. As one leading commentary states:
Under the prevailing interpretation, the enforceability of a contract under the one-year provision does not turn on the actual course of subsequent events, nor on the expectations of the parties as to the probabilities. Contracts of uncertain duration are simply excluded; the provision covers only those contracts whose performance cannot possibly be completed within a year.
Restatement (Second) of Contracts § 130 cmt. a (2012).[4]
Gulf Solar, Inc. v. Westfall, 447 So.2d 363 (Fla. 2d DCA 1984), is particularly instructive here as it is the most analogous precedent available. There, the plaintiff sued on an oral employment contract for an indefinite term. During a deposition, the plaintiff admitted that he expected his employment to go on for more than one year. Id. at 365. On appeal from the denial of summary judgment based on the statute of frauds, the court held that the expectation of continued employment by both parties did not bring the contract within the statute because it was capable of performance within one year. Id. In other words, even though the expectation of the parties was to continue in the relationship for a long period of time, because neither party was bound to continue, and because complete performance of the contract could be accomplished in less than one year, the contract was not one that could not be performed within one year. The case is analogous here because, in both situations, there is some expectation that the relationship will continue for a long period. However, in both situations, performance is incremental. In the employment context, the employee is typically paid weekly or monthly. In the instant situation, the parties participated in a weekly drawing. In both, either party is free to end the contract at any time without breach. In the procedural posture of this case, we are compelled to assume that Browning was aware of the contract and could have ended it at anytime.
*152 The holding in Gulf Solar, Inc., is buttressed by decades of decisions, including a decision of our state’s highest court. See, e.g., Berger v. Jackson, 156 Fla. 251, 23 So.2d 265, 267 (1945) (oral agreement to compensate another upon promisor’s death not within statute of frauds because promi-sor could die within one year); Terzis v. Pompano Paint & Body Repair, Inc., 127 So.3d 592, 2012 WL 6601316 (Fla. 4th DCA Dec. 19, 2012) (contract possibly performed within one year not invalid under statute of frauds); Aspsoft, Inc. v. Web-Clay, 983 So.2d 761, 769 (Fla. 5th DCA 2008) (contract not within statute of frauds if performance within one year is possible); Acoustic Innovations, Inc. v. Schafer, 976 So.2d 1139, 1143 (Fla. 4th DCA 2008) (only contract incapable of performance within one year falls within statute of frauds); Elliot v. Carl H. Winslow, Jr., P.A., 737 So.2d 609, 610 (Fla. 2d DCA 1999) (citing Yates for proposition that “[o]nly if a contract could not possibly be performed within one year would it fall within the statute”); Wilcox v. Lang Equities, Inc., 588 So.2d 318, 320 (Fla. 3d DCA 1991) (contract that can possibly be performed within one year not within statute of frauds); De Ribeaux v. Del Valle, 531 So.2d 992, 993 (Fla. 3d DCA 1988) (citing Yates and holding that oral joint venture agreement to “pool resources” in sale of real estate and split profits not within statute of frauds because nothing in agreement’s terms precluded performance within one year); Futch v. Head,, 511 So.2d 314, 319 (Fla. 1st DCA 1987) (citing Yates for proposition that unless contract, by its terms, cannot be performed within one year, contract not within statute of frauds, even if performance takes several years); City of Clewiston v. B & B Cash Grocery Stores, Inc., 445 So.2d 1038, 1040 (Fla. 2d DCA 1984) (because business could end within one year, agreement by city to furnish electricity to business for indefinite period not within statute of frauds, even though parties expected it to last longer than one year).
The majority neither explains, distinguishes nor contradicts any of these authorities. Instead, the majority simply concludes that the so-called qualifying rule in Yates compels reversal. Clearly, as Judge Lawson concedes, nothing in the holding in Yates supports this conclusion. In Yates, Ball, an investor in a financially troubled property, had agreed as part of a three-way agreement that he would “pay ... bonds ... [which fell] due approximately four years from the date of the agreement,” in exchange for the bondholders’ agreement to extend the maturity on the bonds and cooperate in the extinguishment of subordinate lienors.[5] 181 So. at 342. When Ball defaulted, he interposed the defense of the statute of frauds because performance was not due for four years. In rejecting that defense, our high court said: “While the second mortgage bonds were not due for four years and the interest was payable semi-annually, they were by their terms susceptible of payment in full at any time upon notice given ....” Id. at 344 (emphasis added). The holding in Yates is that, when “there is nothing in [the] terms [of the contract] to show that it could not be performed within a year” and it is capable of performance within one year, the contract is outside the statute of frauds. Id.
The starting point in Yates is the court’s adherence to the principle that the applicability of the statute of frauds depends on the “terms of the contract.” Only “con *153 tracts which by their terms are not to be performed within a year” violate the statute. Id. (emphasis added) (citing McPherson v. Cox, 96 U.S. 404, 24 L.Ed. 746 (1877); see also 129 A.L.R. 534 (citing Yates among cases that “have taken the view that, unless it appeared from the contract itself that it was not to be performed within one year, an oral contract was not within the statute of frauds, even though full performance within that time appeared improbable” (emphasis added))). Thus, an oral contract by a painter to maintain the exterior of a building for a five-year term would violate the statute because, according to its terms, it could not legally be performed within one year. Conversely, an oral contract by a painter to maintain the exterior of a building for an indefinite period of time would not violate the statute because either party could terminate it at any time and still fully perform. This part of Yates is straight forward in application.
What is not so straight forward is the so-called qualifying rule, expressed in dicta, which has led to confusion and inconsistency in the district courts.[6] The qualifying rule is not an exception to the general rule; it is a qualifier. It simply adds a corollary to the general rule that the determination of whether “contracts ... by their terms are not to be performed within a year” includes consideration of the contract’s object, the circumstances surrounding the making of the contract, as well as the contract’s express terms. Even then, only when these extrinsic circumstances clearly lead to the conclusion that the contract cannot be performed within one year, is the contract invalid. Thus, a contract by Michelangelo to paint the ceiling of the Sistine Chapel, although devoid of an express time for performance, might be invalid under the statute if it is “clearly established” in the evidence that it cannot in fact be performed within one year.
In his concurring opinion, Judge Lawson relies upon an American Jurisprudence article setting forth a “minority view” concerning contracts of indefinite duration. He quotes from the article that “where it clearly appears from the nature of the contract that the parties contemplated a permanent arrangement necessarily extending beyond the year or that they did not contemplate performance within a year, the contract is within the statute and must be in writing.” 72 Am. Jur. 2d Statute of Frauds § 13 (2013). Not quoted by Judge Lawson, however, is the very next sentence, which expounds on the sentence he quotes: “Thus, if it is quite clear that the defendant’s liability under the alleged oral contract would continue for an indefinite period of time beyond ... one year, and includes no event that might end the contractual relationship ... within a year, the contract is within the statute.” The omitted sentence makes clear that a terminable-at-will contract such as the one here is outside the statute. Liability to perform does not extend beyond one year and it may be ended before then, because it may be ended by either party at any time. Again, for purposes of directed verdict, we must assume that the contract was made and Poirier was fully aware of it.
One of the “minority view” cases cited in the American Jurisprudence article that Judge Lawson relies on provides a rare example of how the qualifying rule is applied.[7] In Niday v. Niday, 643 S.W.2d 919 *154 (Tex.1982), the alleged oral contract was between two brothers who worked together in a funeral home owned by one brother. The brother who owned the funeral home allegedly promised the other brother a share in the ownership of the business when and if the other brother obtained his funeral director’s license. Although the contract did not contain an express time for performance, it was undisputed that the brother could only get a license after completing one year of schooling, followed by one year of apprenticeship. Consequently, there was no way to perform the contract within one year, not because a contractual term required performance over a period of more of than one year, but because performance of the contract within one year was a factual impossibility.
According to the qualifying rule, the statute only applies if it “clearly appears[8] that the parties intended that it should extend for a longer period than a year.” Yates, 181 So. at 344 (emphasis added). The majority and Judge Lawson construe this sentence as if the word “should” is omitted. This construction changes the meaning.[9] In this context, “should” means obliged to or must.[10] It is only when performance clearly must take more than one year that the statute applies. Yates drives this point home when it states that unless something “embraced within [the contract’s] terms ... shows conclusively that it was intended to run for more than a year,” it is outside the statute. Id. (emphasis supplied). To construe Yates otherwise disregards the plain language of the statute. Yates is in full accord with the universal interpretation of the phrase, “not to be performed.” Yates differs from the prevailing rule only in its authorization to consider extrinsic evidence to determine whether the contract can be performed within one year.
At the risk of being repetitive, I emphasize that the majority’s view of Yates creates an irreconcilable conflict with the Florida Supreme Court’s decision in Berger, which, post-Faies, concluded that a contract not to be performed until the death of the promisor (with no evidence that the promisor expected to die within one year) was not within the statute of frauds. The majority simply ignores Berger, rather than make any attempt to explain or distinguish it.
Here, the contract was to play the lottery and split the winnings. There was nothing within the express terms of the *155 contract that required performance for any particular time period. Either party could have elected to end the arrangement after one day, one week or one month without breaching its terms. Nor is there anything within the object of this contract or circumstances to negate the possibility of full performance within a year. The lottery is a weekly drawing. The performance was accomplished by the purchase of tickets in a weekly drawing and, if the purchased tickets were winners, splitting the proceeds. The agreement was not “play for two years,” “play until we win big,” or even “play until we win”; rather, it was, “when we play, if we win, we split the prize.” Under this arrangement, full performance occurred every time the parties purchased a ticket and, if a winner, shared their winnings, no matter the amount.
Even if Browning and Poirier agreed to continue to play for the duration of the romantic relationship, because the romantic relationship was itself terminable at will, it was factually possible to perform the contract within one year — no less so than the life-of-the-person contract in Berger or life-of-the-business contracts in De Ribeaux and City of Clewiston. The fact that the parties stayed together for many years is irrelevant. The contract was either valid or invalid at its inception. Yates, 181 So. at 344-45 (fact that performance exceeded one year is not material to determination of whether contract violated statute of frauds; statute “does not apply because they may not be performed within that time”); Futch, 511 So.2d at 319; Williston on Contracts § 24:3 (if performance within year possible at time contract is made, makes no difference that performance takes longer than year). Neither the express terms nor surrounding circumstances “negated” the “right” to performance within one year. See 129 A.L.R. 534 (quoting Whitley, 15 S.W. at 466, and stating terms of contract must contain “negation of the right to perform it within the year” to bring contract within statute of frauds).
Finally, although I appreciate that my colleagues have agreed to certify a question of great public importance, and I agree that our high court’s decision in Yates should be explained, I am constrained to disagree with the question posited. The appropriate question in my view is as follows:
Is a terminable-at-will agreement to pool lottery winnings unenforceable in the absence of an express .agreement to continue the agreement for a period of time exceeding one year, when full performance of the agreement is possible within one year from the inception of the agreement.
I would reverse on both issues.
GRIFFIN, J., concurs.

. I concur with the conclusion that the directed verdict on the unjust enrichment count was error. The trial judge directed a verdict on this count based on the argument that the law will not imply a contract where an express contract exits. See, e.g., Kovtan v. Fre-deriksen, 449 So.2d 1 (Fla. 2d DCA 1984). The flaw in the trial judge's reasoning is that Browning had two alternative theories of recovery. One that the parties made an oral contract to split all winnings from playing the lottery. Two, that Browning provided the consideration for the purchase of the winning ticket with an implied understanding that they would split the winnings, if any. The jury can reject Browning's first theory, finding as a matter of fact that no contract was made, but agree with Browning on the alternative theory. If the jury concludes that an express contract did not exist, the alternative theory is not legally repugnant. Because no other issues were argued, I express no opinion on the viability of this claim or the correct measure of damages.

. This is one of the rare occasions when I part company with my learned colleague, Judge Lawson, who relies on legislative intent to support his concurrence. A statute’s intent should be determined based on the plain meaning of the words used and without resort to other construction conventions unless an ambiguity is identified. Samples v. Fla. Birth-Related. Neurological, 40 So.3d 18, 21 (Fla. 5th DCA 2010). One reason for this rule is that legislative history is difficult to discern with accuracy, particularly where, as here, we are dealing with a statute that is patterned after one adopted in England in the seventeenth century. The words here are crystal clear. The language is unequivocal. Only those contracts that are "not to be performed" within one year are prohibited. "Not to be performed” means cannot be performed. Judge Lawson cites no legislative history or other authoritative source for his conclusion. The best evidence of intent is the statute itself. The fact that the Florida legislature has made no revision to the statute when reenacted, despite decades of decisions holding that a possibility of performance takes the contract out of the statute, bulwarks that interpretation. Gulfstream Park Racing Ass'n v. Dep't of Bus. Regulation, 441 So.2d 627 (Fla. 1983) (reenactment of statute after judicial construction carries presumption that construction is correct).

. Some of the facts are more clearly presented in Ball v. Yates, 158 Fla. 521, 29 So.2d 729 0946).

. See infra note 7.

. LynldJs Communications, Inc. v. WebMD Corp., 965 So.2d 1161 (Fla. 2d DCA 2007), provides the only other example I have found. Because the case does not delineate the evidence adduced below, it is not particularly instructive. Without conceding the correct *154 ness of this decision, it is easily distinguished nevertheless. There, the evidence was "beyond dispute that the joint business arrangement ... would be a long-term arrangement ....” Id. at 1165. The question in these cases is whether "performance" can be accomplished in one year. The creation of a business that "would be a long-term arrangement" is a materially different objective than an agreement to roll the dice on the lottery and split the winnings. I do note, however, that LynkUs Communications, Inc. appears to be in conflict with City of Clewiston, 445 So.2d 1038, an earlier decision from the same court.

.What is meant by "clearly appears” in this sentence is unclear to me. The later reference to "shows conclusively" adds to my confusion. I am not sure whether these are intended to be legal standards or fact issues. Many of these cases, including Yates, have been decided as a matter of law, suggesting that these are legal standards. In any event, the test seems unworkable. I suspect this is why only four jurisdictions have embraced it.

. Judge Lawson says that "should” means "expected,” but this definition renders the use of the word completely unnecessary and requires that we assume its use to be mere surplusage. The word "should” is actually derived from the English word "sholde,” which meant "obliged to.” Merriam-Webster’s Collegiate Dictionary 1153 (11th ed. 2012).

. See supra note 9.