PER CURIAM.
In this case, we consider a certified question concerning the award of compensation under the Florida Birth-Related Neurological Injury Compensation Plan (the Plan). We have for review the decision of the Fifth District Court of Appeal in Samples v. Florida Birth-Related Neurological, 40 So.3d 18 (Fla. 5th DCA 2010). The Fifth District upheld the constitutionality of section 766.31(l)(b)l, Florida Statutes (2010), which provides for an award not exceeding $100,000 to the parents or legal guardians of an infant found to have sustained a birth-related neurological injury. The court held that the statute does not violate equal protection, is not void for vagueness, and does not violate the Samples’ right to access the courts.
The Fifth District certified the following question to be of great public importance:
Does the limitation in section 766.31(l)(b)l., Florida Statutes, of a single award of $100,000 to both parents violate the Equal Protection Clause of the United States and Florida Constitutions?
Id. at 31. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative, and we approve the result of the Fifth District’s decision in Samples.
I. BACKGROUND
In its decision below, the Fifth District set forth the following facts and procedural history:
In August 2007, MacKenzie Samples was born with birth-related neurological injuries, as defined in section 766.302(2), Florida Statutes (2007). Her parents, Angela and Kenneth Samples (“the Samples”), filed a claim with the Division of Administrative Hearings (“DOAH”) for compensation under the Florida Birth-Related Neurological Injury Compensation Plan (“Plan”). The Florida Birth-Related Neurological Injury Compensation Association (“NICA”) agreed that MacKenzie’s injuries were compensable under the plan.
Pursuant to a stipulation between the parties, NICA agreed to pay expenses for MacKenzie’s care pursuant to section 766.31(l)(a) and reasonable attorney’s fees and other expenses pursuant to section 766.31(l)(c). The stipulation resolved the Samples’ major claims except for the amount of parental compensation under section 766.31(l)(b)l. NICA agreed to make a lump sum payment of $100,000 to both parents jointly. However, the Samples reserved the right to have a hearing before an [administrative law judge (ALJ) ] to raise the issue of the interpretation and constitutionality of section 766.31(l)(b)l.
The ALJ approved the stipulation and afforded the parties a hearing to offer any proof they perceived pertinent to the interpretation of section 766.31(l)(b)l. The parties filed a Joint Pre-Hearing Stipulation which included the following “Admitted Facts”:
(1) Once NICA ascertains that a claim is covered, NICA frequently offers a lump sum payment of a parental award totaling $100,000, regardless of whether there are one or two parents involved in the claim. Such offer is subject to the subsequent approval of the ALJ.
*915 (2) Pursuant to section 766.309, Florida Statutes, the ALJ must make all NICA Awards, which includes the parental award pursuant to section 766.31(l)(b)l., Florida Statutes. An ALJ has never ordered NICA to pay a parental award in excess of $100,000, regardless of whether there was one parent or two parents involved in the claim.
(3) In a typical covered claim, NICA does not customarily argue that the parental award should be less than the full $100,000 authorized.
(4) Once the ALJ has ordered payment of a parental award in the amount of $100,000, NICA pays the $100,000 parental award by check made payable to both parents jointly, unless otherwise ordered by the ALJ.
(5) In the past, when there was a dispute between the parents with respect to the amount of the parental award to go to each parent, the ALJ has specified in the Final Order how much of the parental award would be paid to the mother and how much would be paid to the father. In those instances, the combined parental award was typically for the full $100,000.
At the hearing, NICA introduced various documents comprising the legislative history of the Plan. The ALJ also took official notice of two final orders: Waddell v. Florida Birth-Related Neurological Injury Compensation Association, 1999 WL 1483760, DOAH Case No. 98-2991N (May 11, 1999), and Wojtowicz v. Florida Birth-Related Neurological Injury Compensation Association, 1994 WL 1027875, DOAH Case No. 93-4268N (July 22, 1994). The ALJ entered a Final Order denying the Samples’ claim for an additional $100,000 as part of the parental award. He found that the legislative history of section 766.31(l)(b)l. showed that the Legislature clearly intended that the maximum award of $100,000 was for “both parents or legal guardians, and not for each parent or legal guardian.” The ALJ allowed the parties to make arguments and present evidence on the constitutional issues but did not rule on them.
Samples, 40 So.3d at 20-21.
The Samples appealed the ALJ’s final order, claiming that section 766.31(l)(b)l (the “parental award provision”) was ambiguous and challenging the provision on three constitutional grounds: equal protection, vagueness, and access to courts. Samples, 40 So.3d at 23. The Fifth District first held that the parental award provision “clearly and unambiguously provides” for a single award of $100,000 to both parents in the aggregate. Id. at 22. The Fifth District then denied each of the Samples’ constitutional claims, holding that the parental award provision: (1) does not cause disparate treatment among similarly situated persons and — even assuming discrimination did exist — is rationally related to the State’s legitimate interest in maintaining the actuarial soundness of the Plan, id. at 25-26; (2) “is sufficiently clear in its intent to provide no — fault economic compensation to parents” and thus allows for an award to be split — if at all — “based on articulable economic reasons supported by detailed factual findings,” id. at 28; and (3) “provides both a reasonable alternative remedy and a commensurate benefit” to the Samples’ right of access to courts and is the only method of meeting the overpowering public necessity of ending the medical malpractice crisis. Id. at 30.
The Samples now ask this Court to answer the certified question in the affirmative and quash the Fifth District’s decision in Samples. Additionally, the Samples ask this Court to review the Fifth District’s *916 holdings that the parental award provision unambiguously provides for a single award of $100,000 to the parents of an injured child, that the parental award provision is not unconstitutionally vague, and that the parental award provision does not violate the Samples’ right of access to the courts.
II. ANALYSIS
We review a district court’s decision regarding the constitutionality of a statute de novo. State v. Sigler, 967 So.2d 835, 841 (Fla.2007). In the analysis that follows, we first explain that the parental award provision unambiguously provides for only a single award of $100,000. We then answer the certified question in the negative, explaining why the parental award provision does not violate equal protection. After that, we explain why the parental award provision neither is void for vagueness nor unconstitutionally limits the right of access to courts.
A. Statutory Interpretation
The Samples assert that the parental award provision is ambiguous because it could reasonably be interpreted as either providing for an award of $100,000 per parent or as providing for only a single $100,000 award per claim. We have previously explained that “[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.” Fla. Birth-Related, Neurological Injury Comp. Ass’n v. Dep’t of Admin. Hearings, 29 So.3d 992, 997 (Fla.2010) (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984)). The parental award provision provides for “[pjeriodic payments of an award to the parents or legal guardians of the infant found to have sustained a birth-related neurological injury, which award shall not exceed $100,000. However, at the discretion of the administrative law judge, such award may be made in a lump sum.” § 766.31(l)(b)l, Fla. Stat. (2010). We agree with the Fifth District that “[tjhis language cannot be reasonably interpreted to provide multiple awards of $100,000 to each parent of a qualifying child.” Samples, 40 So.3d at 22.
The plain language of the parental award provision clearly states that a singular “award” shall be paid to the plural “parents or legal guardians” of an injured child, “which award shall not exceed $100,000.” § 766.31(l)(b)l, Fla. Stat. (2010). This language does not lend itself to the interpretation — advanced by the Samples — that more than one award may be given or that the total sum of the parental award may amount to more than $100,000. If such a meaning had been intended, the Legislature would have stated that an award be made to “each parent or legal guardian,” which awards “shall not exceed $100,000 each.” Because the statute is unambiguous, we will not look behind the words of the parental award provision to determine if the Legislature intended otherwise. See Daniels v. Fla. Dep’t of Health, 898 So.2d 61, 64 (Fla.2005) (holding that where a “statute is clear and unambiguous, courts will not look behind the statute’s plain language for legislative intent”).
B. Equal Protection
Having determined that the parental award provision clearly provides for only a single award of $100,000 to both parents of an injured child, we now consider the question certified to us by the Fifth District — does the provision violate equal protection? The United States Constitution forbids each state from “denying] to any person within its jurisdiction the equal protection of the laws.” Amend. XIV, § 1, U.S. Const. Similarly, the Florida Consti *917 tution provides that “[a]ll natural persons, female and male alike, are equal before the law.” Art. I, § 2, Fla. Const.
The Samples claim that — under the parental award provision — similarly situated parents are treated differently because those parents who apply for an award alone can receive twice the amount awarded to parents who share or split a parental award. The Fifth District held that the parental award provision does not treat similarly situated persons differently because all people within the statutory classification of “parents” are treated equally in that all “parents” — whether applying for an award singly or jointly — can receive no more than $100,000. Samples, 40 So.3d at 24. The Fifth District also held that any discrimination caused by the provision was “minimal, unintentional and not arbitrary” and that the provision was rationally related to the State’s legitimate interest in preserving the actuarial soundness of the Plan. Id. at 27. The Fifth District therefore upheld the constitutionality of the parental award provision. We agree that the provision does not violate the equal protection clauses of the Florida and United States Constitutions.
Because neither a suspect class nor a fundamental right is implicated here, we review the Samples’ equal protection claim under the rational basis test. See Westerheide v. State, 831 So.2d 93, 110 (Fla.2002). To be entitled to relief under the rational basis test, the Samples must show that the parental award provision does not “bear some rational relationship to legitimate state purposes.” Id. at 110. It is not our task “to determine whether the legislation achieves its intended goal in the best manner possible, but only whether the goal is legitimate and the means to achieve it are rationally related to the goal.” Loxahatchee River Envtl. Control Dist. v. Sch. Bd. of Palm Beach Cnty., 496 So.2d 930, 938 (Fla. 4th DCA 1986). A statute does not fail rational basis scrutiny simply “because it might have gone farther than it did.” Newman v. Carson, 280 So.2d 426, 430 (Fla.1973) (quoting Katzenbach v. Morgan, 384 U.S. 641, 657, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966)).
Limiting the parental award to $100,000 per claim — as opposed to per parent — is rationally related to maintaining the actuarial soundness of the Plan. The facts stipulated to by the parties establish that the administrative law judge has always ordered payment of the full $100,000 authorized by the parental award provision. Any additional payment above the $100,000 authorized by the provision would undeniably have a negative effect on the Plan’s actuarial soundness. As the Fifth District succinctly noted, “the less money NICA is required to pay, the easier it will be for the Plan to remain actuarially sound.” Samples, 40 So.3d at 26.
Moreover, the actuarial soundness of state programs has been upheld as a legitimate state interest by several courts faced with equal protection claims. See Loxahatchee, 496 So.2d at 938 (holding that a statutory amendment exempting public school facilities from impact and service availability fees was rationally related to the legitimate state interest in keeping public school construction costs within reasonable bounds); Day v. Mem'l Hosp. of Guymon, 844 F.2d 728, 731 (10th Cir.1988) (holding that a medical malpractice “notice of claim” provision was rationally related to several legitimate state interests, including “the maintenance of fiscal stability”); Farrier v. Teacher’s Ret. Bd., 328 Mont. 375, 120 P.3d 390, 395 (2005) (holding that a Montana retirement benefit statute was rationally related to the state’s legitimate interest in “keepfing] the budget and retirement system actuarially sound”); Rybak v. State Emp.'s Ret. Bd., *918 154 Pa.Cmwlth. 586, 624 A.2d 286, 288 (1993) (holding that the “legitimate state goal here was actuarial soundness” when reviewing an equal protection challenge to Pennsylvania’s two-tiered retirement compensation classification); Osick v. Pub. Emp. Ret. Sys. of Idaho, 122 Idaho 457, 835 P.2d 1268, 1273-74 (1992) (holding that a statute providing for offset against disability retirement benefits in the amount of annual workers’ compensation payments advanced the state’s legitimate interest in maintaining “adequate funding and actuarial soundness” of the state public employee retirement system); Caruso v. City of Omaha, 222 Neb. 257, 383 N.W.2d 41, 45 (1986) (holding that “the actuarial soundness of the system is one ... justification” for a statute requiring city employees to contribute to their retirement system). We hold that the State of Florida likewise has a legitimate interest in the actuarial soundness of the Plan. Therefore, because limiting the parental award to $100,000 per claim is rationally related to maintaining the actuarial soundness of the Plan, the parental award provision does not violate equal protection.
As support for the conclusion that the statute violates equal protection, the dissent relies on Shapiro v. Thompson, 394 U.S. 618, 627, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), overruled on other grounds by Edelman v. Jordan, 415 U.S. 651, 670-71, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), which held that a “statutory prohibition of [welfare] benefits to residents of less than a year creates a classification which constitutes an invidious discrimination” and thus denies “equal protection of the laws.” But Shapiro — as its holding clearly shows— dealt with a classification of an entirely different character than the classification at issue here. Shapiro recognized that “the effect of the waiting-period requirement” was “to create two classes of needy resident families indistinguishable from each other except that one is composed of residents who have resided a year or more, and the second of residents who have resided less than a year, in the jurisdiction,” and that there was “weighty evidence that exclusion from the jurisdiction of the poor who need or may need relief was the specific objective of these provisions.” Id. at 627, 628, 89 S.Ct. 1322. The Court concluded that “the purpose of inhibiting migration by needy persons into the State is constitutionally impermissible.” Id. at 629, 89 S.Ct. 1322. The denial of “welfare benefits to otherwise eligible applicants solely because they have recently moved into the jurisdiction” “serves to penalize the exercise of’ the constitutional right to move from one jurisdiction to another. Id. at 634, 89 S.Ct. 1322. Applying strict scrutiny, the Court determined that no compelling state interest justified a classification impinging on “the fundamental right of interstate movement.” Id. at 638, 89 S.Ct. 1322. Such an invidious classification could not be justified by “[t]he saving of welfare costs.” Id. at 633, 89 S.Ct. 1322. The parental award provision of the Plan, however, does not in any way penalize the exercise of any constitutional right. Nor does the parental award provision discriminate against a class of needy persons.
In dicta, the Shapiro Court observed that “even under traditional equal protection tests a classification of welfare applicants according to whether they have lived in the State for one year would seem irrational and unconstitutional.” Id. at 638 (footnote omitted). This was based on the Court’s evaluation of the various reasons offered as justifications for the waiting period: facilitating the planning of the welfare budget; providing an objective test of residency; minimizing the opportunity for recipients fraudulently to receive payments from more than one jurisdiction; and encouraging early entry of new resi *919 dents into the labor force. Id. at 634-38, 89 S.Ct. 1322. Rejecting those reasons as unfounded, the Court observed that the various governmental jurisdictions “do not use and have no need to use the one-year requirement for the governmental purposes suggested.” Id. at 638, 89 S.Ct. 1322. Nothing in Shapiro supports the suggestion that a classification designed to reduce the cost of a government program is inherently without any rational basis and thus invidious.
We agree with the Fifth District’s conclusion that our equal protection analysis in St Mary’s Hospital, Inc. v. Phillipe, 769 So.2d 961 (Fla.2000), does not dictate a different result. In St. Mary’s Hospital, we considered, inter alia, whether the noneconomic damages cap in the arbitration provisions of the Medical Malpractice Act — which provides that “[njoneconomic damages shall be limited to a maximum of $250,000 per incident” — limits the aggregate recovery of all claimants with respect to a single incident or the individual recovery of each claimant. 769 So.2d at 967 (emphasis omitted) (quoting § 766.207(7)(b), Fla. Stat. (1997)). Having determined that the legislative intent behind the Medical Malpractice Act was “to provide a mechanism for the prompt resolution of medical malpractice claims through mandatory presuit investigation and voluntary binding arbitration of damages [and] to provide substantial incentives to claimants and defendants to voluntarily submit them cases to binding arbitration,” we concluded that the $250,000 limit applied to each individual claimant. Id. at 970. We reasoned that doing so promoted the intended “early resolution of medical negligence claims” by providing incentives for claimants, defendants, and liability insurers to voluntarily arbitrate damages. Id.
We further noted that “were we to interpret the noneconomic damages cap to apply to all claimants in the aggregate, ... such an interpretation would create equal protection concerns.” Id. at 971. We reasoned that limiting the $250,000 per incident to an aggregate award would result in the disparate treatment of the deaths “of a wife who leaves only a surviving spouse ... [and] of a wife who leaves a surviving spouse and four minor children.” Id. at 972. The same concerns are not present here.
Whereas the provision of the Medical Malpractice Act at issue in St. Mary’s Hospital expressly concerns fault-based noneconomic damages for survivors of the deceased, the Plan at issue here establishes a system of no-fault compensation. The no-fault character of the Plan sets the parental award provision apart from the statutory limitation on fault-based damages at issue in St. Mary’s Hospital. Limitations on damages that raise equal protection concerns under a fault-based system are dissimilar and appropriately viewed differently than limitations on compensation under a system where eligible claimants are assured of a recovery without regard to fault.
C. Vagueness
The Samples argue that the parental award provision is unconstitutionally vague — and therefore void — because it fails to give the administrative law judge guidance on how much of the $100,000 to grant in each case and — when necessary— how to split the award between parents. We reject this argument.
The void-for-vagueness doctrine flows from the Due Process Clause of the United States Constitution and “bars enforcement of ‘a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its mean- *920 mg and differ as to its application.’ ” United States v. Lanier, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (quoting Connolly v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). The doctrine is therefore designed to protect individuals from arbitrary and discriminatory application of the law by ensuring that all laws clearly notify the public of the specific conduct required or forbidden. Bouters v. State, 659 So.2d 235, 237 (Fla.1995). The doctrine comes into play where the enforcement of legislation involves “the exaction of obedience to a rule or standard which [is] so vague and indefinite as really to be no rule or standard at all.” A.B. Small Co. v. Am. Sugar Refining Co., 267 U.S. 233, 239, 45 S.Ct. 295, 69 L.Ed. 589 (1925).
The parental award provision, however, is not a provision which requires or forbids conduct. The Samples have failed to establish that the vagueness doctrine should be extended to the context presented by this case to invalidate a statute because it affords a measure of discretion to an administrative judge. The Samples cite no authority which would support such an application of the void-for-vagueness doctrine. We conclude that the application of the doctrine in this context is wholly unwarranted by the rationale for the doctrine.
D. Access to Courts
The Samples also challenge the constitutionality of the parental award provision by claiming that the provision violates their rights of access to the courts. The Florida Constitution provides that “[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.” Art. 1, § 21, Fla. Const. We have previously interpreted article 1, section 21 to mean that
where a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
Kluger v. White, 281 So.2d 1, 4 (Fla.1973). A statute restricting access to the courts is therefore not permitted “unless one of the Kluger exceptions is met; i.e., (1) providing a reasonable alternative remedy or commensurate benefit, or (2) legislative showing of overpowering public necessity for the abolishment of the right and no alternative method of meeting such public necessity.” Smith v. Dep’t of Ins., 507 So.2d 1080, 1088 (Fla.1987). Here, the parental award provision provides a reasonable alternative remedy to the Samples’ right to access the courts for redress of their injury.
As the Fifth District noted, under the provision “affected parents receive a streamlined recovery in an administrative setting without the need to prove fault and other damages.” Samples, 40 So.3d at 29. We have previously held that a similar no-fault compensation scheme provided a reasonable alternative remedy — despite the fact that it awarded less than might be obtained under traditional tort remedies— because it provided the compensation “regardless of fault and without the delay and uncertainty of tort litigation.” Martinez v. Scanlan, 582 So.2d 1167, 1172 (Fla.1991) (holding that the workers’ compensation *921 statute reducing benefits to eligible workers still provided reasonable alternative remedy by continuing to provide full medical care and wage-loss payments). We are not convinced by the Samples’ argument that — because the parental award provision severely truncates the amount that parents could receive from a jury in non-economic damages — it does not provide a reasonable alternative remedy.
As stated above, the express purpose of the Plan is “to provide compensation, on a no-fault basis, for a limited class of catastrophic injuries that result in unusually high costs for custodial care and rehabilitation.” § 766.301(2), Fla. Stat. (2010). The Plan as a whole — including the parental award provision — provides an alternative remedy to the uncertain and speculative compensation parents might receive through traditional tort remedies. As well as providing the $100,000 parental award, the Plan specifically provides for particular expenses incurred by parents due to the child’s injury. Additionally, the Plan does not act as the exclusive remedy in cases “where there is clear and convincing evidence of bad faith or malicious purpose or willful and wanton disregard of human rights, safety, or property.” § 766.303(2), Fla. Stat. (2010).
We therefore hold that the Plan — including the parental award provision — provides a reasonable alternative remedy to a parent’s right to access the courts for redress of their child’s neurological birth-related injury. See Macri v. Clements & Ashmore, P.A., 15 So.3d 762, 766 (Fla. 1st DCA 2009) (holding that “even if recovery is not actually obtained under the Plan the no-fault system of compensation therein is a reasonable alternative to the civil recourse which might have otherwise been available”). Accordingly, we reject the Samples’ argument.
III. CONCLUSION
In light of the above, we answer the question certified to us by the Fifth District in the negative and approve the result of the Fifth District’s decision below.
It is so ordered.
POLSTON, C.J., and CANADY, J., concur.
LEWIS, J., concurs in result.
LABARGA, J., concurs in result only.
PERRY, J., concurs in part and dissents in part with an opinion, in which PARIENTE and QUINCE, JJ„ concur.