PARIENTE, J.,
concurring in result.
I agree with the plurality opinion authored by Justice Lewis that the statutory cap on wrongful death noneconomic damages provided by the medical malpractice statute violates the Equal Protection Clause of the Florida Constitution. Like the plurality, I would therefore answer the first rephrased certified question in the affirmative and decline to answer the remaining questions certified by the Eleventh Circuit Court of Appeals. In fact, as I explain, I agree with much of the plurality opinion that declares the statutory damages cap unconstitutional as applied to wrongful death actions.
However, I do not fully join in the plurality opinion because I respectfully disagree with the plurality’s application of the rational basis test in this case. Specifically, my primary disagreement is with the decision not to afford deference to the legislative findings in the absence of a showing that the findings were “clearly erroneous.” Univ. of Miami v. Echarte, 618 So.2d 189, 196 (Fla.1993).
Although this Court is not bound to blindly defer to all legislative findings, I disagree with the plurality’s independent evaluation and reweighing of reports and data, including information from legislative committee meetings and floor debate, as well as an article published in the Palm Beach Post newspaper, as part of its review of whether the Legislature’s factual findings and policy decisions as to the alleged medical malpractice crisis were fully supported by available data. See, e.g., plurality op. at 908-10 (Lewis, J.) (quoting from the legislative floor debate and committee meeting testimony and reviewing studies); id. at 910-11 (citing to and quoting from a newspaper article and quoting additional legislative committee testimony and floor debate). I emphasize, however, that although I do not fully join in the plurality’s application of the rational basis test, I agree with the ultimate conclusion that the arbitrary reduction of survivors’ noneconomic damages in wrongful death cases based on the number of survivors lacks a rational relationship to the goal of reducing medical malpractice premiums.
My analysis proceeds in the following way. I first set forth the background of the case, which frames the specific constitutional question in need of this Court’s resolution — a resolution the plurality and I both agree on. With this context in mind, I then explain how and why the plurality and I agree as to the as-applied unconstitutionality of the statutory cap on noneco-nomic damages in wrongful death actions. Finally, I discuss where my legal analysis *917 diverges from the plurality’s and why, despite my agreement with the ultimate conclusion, I am unable to fully join in the plurality opinion.
I. Background
As described in the findings of fact of the federal district court where this litigation began, at the time of her death, Michelle McCall was a “bright, beautiful, and healthy, 20-year-old woman” who tragically “bled to death in the presence of all medical staff who were attending her” in the course of receiving prenatal care and delivery services for her pregnancy at Eglin Air Force Base’s clinic. Estate of McCall v. United States, 663 F.Supp.2d 1276, 1288, 1291 (N.D.Fla.2009). The facts of the medical malpractice and the circumstances of Michelle’s tragic death are not in dispute or at issue before this Court. Rather, we are faced with a legal question as to the constitutionality of Florida’s statutory limitation on noneconomic damages to Michelle’s survivors, as set forth in section 766.118, Florida Statutes.
Section 766.118 provides in pertinent part as follows:
(2) Limitation on noneconomic damages for negligence of practitioners.—
(a) With respect to a cause of action for personal injury or wrongful death arising from medical negligence of practitioners, regardless of the number of such practitioner defendants, noneco-nomic damages shall not exceed $500,000 per claimant. No practitioner shall be liable for more than $500,000 in noneconomic damages, regardless of the number of claimants.
(b) Notwithstanding paragraph (a), if the negligence resulted in a permanent vegetative state or death, the total non-economic damages recoverable from all practitioners, regardless of the number of claimants, under this paragraph shall not exceed $1 million. In cases that do not involve death or permanent vegetative state, the patient injured by medical negligence may recover noneconomic damages not to exceed $1 million if:
1. The trial court determines that a manifest injustice would occur unless increased noneconomic damages are awarded, based on a finding that because of the special circumstances of the case, the noneconomic harm sustained by the injured patient was particularly severe; and
2. The trier of fact determines that the defendant’s negligence caused a catastrophic injury to the patient.
(c)The total noneconomic damages recoverable by all claimants from all practitioner defendants under this subsection shall not exceed $1 million in the aggregate.
§ 766.118, Fla. Stat. (2005).
As to noneconomic damages, Michelle left as survivors her parents and her baby boy, who was born at the same time Michelle died. The federal district court found as follows as to the child’s noneco-nomic damages:
W.W., who is now a healthy and active 3 1/2 year-old boy [as of 2009], has been deprived the privilege of ever knowing his mother, of having her comfort and emotional support throughout his and her shared lifetimes, and of benefitting from her guidance and companionship. The negligent conduct in this case occurred within a matter of hours of his birth, but it leaves for W.W. a void in his life that will never truly be filled. His pain and suffering are difficult to quantify, but no one disputes the magnitude of his loss. On the other hand, the court is mindful that W.W.’s pain is necessarily tempered by his age at the time of his mother’s death. He lives with the pain of never knowing her, but not with the *918 pain that comes from suddenly losing the love and companionship of a parent one has bonded with emotionally. W.W.’s life, while shadowed by this tragedy, will be lived with the love of those who have surrounded him from infancy — his father and his grandparents— not the pain of a conscious memory of his mother’s death. The court does not intend to minimize the loss of one’s mother; such is an obvious and enormous loss. The court simply finds that the pain and suffering for W.W. is tempered by his infancy at the time of his mother’s death, a factor that should be reflected in the noneconomic damage award. To compensate for W.W.’s loss of parental companionship, instruction, and guidance and for his mental pain and suffering, the court awards $500,000.00.
Id. at 1293-94 (footnote omitted).
As to Michelle’s parents, Edward M. and Margarita F. McCall, the federal district court awarded $750,000 to each for their pain and suffering, explaining as follows:
There is no question, as shown by the evidence, that Mr. and Mrs. McCall were both very close to their daughter and that this tragedy has greatly impacted the quality of their lives, emotionally as well as physically. They were otherwise healthy, active, and excited about helping their daughter and new grandson. They went to the hospital with the happy and hopeful expectation of bringing their daughter home with a healthy baby but instead found themselves faced with the agonizing decision of whether to remove life support from her. Mr. McCall struggled as he recounted their hope of Michelle possibly regaining consciousness as they laid W.W. across her before she died, and also so they could have one photograph of her “holding” her baby before she died. The pain from the loss of their only daughter and the mental agony of having to make the decision to remove her from life support will not soon abate, if ever in their lifetimes. The court takes into consideration, however, that because of their relationship as a married couple, they will both undeniably benefit from each other’s noneconomic damage award.
Id. at 1294.
As set forth by the plurality, because section 766.118(2) caps total noneconomic damages recoverable by all claimants at $1 million, each of these three independent survivors had his or her award of noneco-nomic damages significantly reduced so that the damages were proportionally divided so as not to exceed the statutory cap. In other words, instead of receiving the full amount of noneconomic damages awarded by the federal district court, none of which individually exceeded $1 million, each individual survivor was treated differently as to his or her noneconomic damages award because there was more than one survivor entitled to noneconomic damages in this case.
This is where the equal protection argument addressed by the plurality becomes important. Critically, as I explain in the next section, despite not fully joining in the plurality opinion, I do agree that the non-economic damages cap violates Florida’s Equal Protection Clause as applied to wrongful death actions under the constitutional rational basis test.
II. Agreement with the Plurality Opinion
I agree with the plurality opinion as to the following issues. First, I agree that there are two prongs to the rational basis test, requiring the Court to consider both whether the statute serves a legitimate governmental purpose and whether the Legislature was reasonable in its belief *919 that the challenged classification would promote that purpose. See, e.g., Hechtman v. Nations Title Ins. of N.Y., 840 So.2d 993, 996 (Fla.2003). As this Court explained in one of its most recent applications of the rational basis test in the equal protection context, “[t]o be entitled to relief under the rational basis test, the [challengers] must show that the [challenged statute] does not ‘bear some rational relationship to legitimate state purposes.”’ Samples v. Fla. Birth-Related, Neurological Injury Comp. Ass’n, 114 So.3d 912, 917 (Fla.2013) (quoting Westerheide v. State, 831 So.2d 93, 110 (Fla.2002)). It is not this Court’s “task ‘to determine whether the legislation achieves its intended goal in the best manner possible, but only whether the goal is legitimate and the means to achieve it are rationally related to the goal.’ ” Samples, 114 So.3d at 917 (quoting Loxahatchee River Envtl. Control Dist. v. Sch. Bd. of Palm Beach Cnty., 496 So.2d 930, 938 (Fla. 4th DCA 1986)).
Second, I also agree that this Court’s role is not to simply “rubber stamp” the Legislature’s actions. Plurality op. at 905 (Lewis, J.). Indeed, although this Court’s case law requires deference to the Legislature’s factual determinations, see Echarte, 618 So.2d at 196, this Court’s precedent also clearly establishes that the Legislature’s findings “must actually be findings of fact” and are not entitled to the presumption of correctness “if they are nothing more than recitations amounting only to conclusions.” Moore v. Thompson, 126 So.2d 543, 549 (Fla.1960) (quoting Seagram-Distillers Corp. v. Ben Greene, Inc., 54 So.2d 235, 236 (Fla.1951)).
Third, and most importantly, I agree with the plurality’s conclusion that the statutory cap on noneconomic damages is unconstitutional as applied to wrongful death actions. In my view, the Court’s controlling precedent in St. Mary’s Hospital, Inc. v. Phillipe, 769 So.2d 961, 971 (Fla.2000), is directly on point in holding that this type of statutory scheme is improper because “differentiating between a single claimant and multiple claimants bears no rational relationship to the Legislature’s stated goal of alleviating the financial crisis in the medical liability insurance industry.” Id.
Indeed, as the plurality correctly notes, this Court “clearly announced in Phillipe that aggregate caps or limitations on non-economic damages violate equal protection guarantees under the Florida Constitution when applied without regard to the number of claimants entitled to recovery.” Plurality op. at 901 (Lewis, J.). I agree with the plurality that this “inherently discriminatory action and resulting invidious discrimination do not pass constitutional muster.” Id.
The rationale of Phillipe is particularly applicable in this case given that, in capping wrongful death noneconomic damages regardless of the number of survivors, the only asserted legitimate State interest is the alleviation of rising medical malpractice insurance premiums paid by the affected doctors. However, as the plurality explains, there is no mechanism in place to assure that savings are actually passed on from the insurance companies to the doctors. See plurality op. at 911-12 (Lewis, J.) (explaining that section 766.118 contains no requirement that insurance companies use the acquired savings to lower malpractice premiums, discussing how subdivision (8) was subsequently repealed, and reviewing the reasoning of other courts that have expressed concern about the constitutionality of a damages cap in light of this missing link).
Of course, the statutory cap on noneco-nomic damages provides no commensurate benefit to the victims of medical malpractice, and if there is also no commensurate *920 benefit to the doctors and hospitals involved in medical malpractice litigation, then only the insurance companies benefit in the form of an increase in profits. See id. This critical missing link causes me to believe that the statutory cap on noneco-nomic damages in medical malpractice actions not only fails the smell test, but the rational basis test as well, especially in light of the fact that subdivision (8) was repealed as “obsolete.” See id. at 912. In other words, the statutory cap on noneco-nomic damages fails the rational basis test because “the Legislature could not have had any reasonable ground for believing that there were public considerations justifying the particular classification and distinction made,” North Ridge General Hospital, Inc. v. City of Oakland Park, 374 So.2d 461, 465 (Fla.1979), since an aggregate cap on damages without regard to the number of claimants bears no rational relationship to the asserted State interest in “alleviating the financial crisis in the medical liability insurance industry.” Phillipe, 769 So.2d at 971.
Finally, I strongly agree with the plurality that “even if a ‘crisis’ existed when section 766.118 was enacted, a crisis is not a permanent condition.” Plurality op. at 913 (Lewis, J.). As I stated in my dissent in Mizrahi v. North Miami Medical Center, Ltd., 761 So.2d 1040 (Fla.2000):
There is no indication that the past medical malpractice crisis continues into the present. If the medical malpractice crisis does not continue into the present, I fail to see how a past crisis can justify the permanent exclusion of an entire class of victims from seeking compensation for pain and suffering damages due to the wrongful death of their parents as a result of medical malpractice.
Indeed, it is a “settled principle of constitutional law” that although a statute is constitutionally valid when enacted, that statute may become constitutionally invalid due to changes in the conditions to which the statute applies. See Conner v. Cone, 235 So.2d 492, 498 (Fla.1970); see also Georgia S. & F. Ry. Co. v. Seven-Up Bottling Co. of Southeast Ga., 175 So.2d 39, 40 (Fla.1965). Accordingly, while it is not our role to reexamine legislative fact-finding, we also need not blindly accept the Legislature’s conclusions, especially when such conclusions may no longer be valid due to changed conditions. See Seagram-Distillers Corp. v. Ben Greene, Inc., 54 So.2d 235, 236 (Fla.1951); see also Conner, 235 So.2d at 498.
[[Image here]]
All other adult children who lose their parents as a result of other negligent conduct have the right to recover pain and suffering damages if their parent died without a spouse. See § 768.21(8), Fla. Stat. (1999). However, in the case of adult children of medical malpractice victims, the Legislature has denied compensation for mental pain and suffering not because the claims of the adult children are meritless, but because of the adult children’s age and because their parents died as a result of medical malpractice ....
[[Image here]]
In sum, there is no indication that the distinction drawn by the statute bears a reasonable relationship to a legitimate state interest associated with ensuring accessible health care. Further, there is no indication that the medical malpractice crisis that formed the basis for treating this class of survivors differently than all other adult children even continues to this day. I therefore believe that the challengers of this statute have met their burden and have demonstrated that the distinction drawn by the Legislature is arbitrary.
*921 Id. at 1048-44 (Pariente, J., dissenting) (emphasis added) (footnote omitted).
The same reasons that led me to conclude that the continued deprivation of wrongful death actions to a class of survivors in medical malpractice actions was a denial.of equal protection in Mizrahi apply in this context as well. There is no evidence of a continuing medical malpractice crisis that would justify the arbitrary reduction of survivors’ noneconomic damages in wrongful death cases based on the number of survivors. This arbitrary reduction punishes the survivors of victims of medical malpractice without any commensurate benefit to the survivors and without a rational relationship to the goal of reducing medical malpractice premiums. Accordingly, like the plurality, I would answer the first rephrased certified question in the affirmative and hold that Florida’s statutory cap on noneconomic damages is unconstitutional as applied to wrongful death actions.
III. Disagreement with the Plurality Opinion
Although I agree with many aspects of the plurality opinion and with the ultimate conclusion as to the unconstitutionality of the statute, I cannot join in all of the plurality’s legal analysis. In particular, my disagreement stems from my view that our precedent does not allow this Court to engage in the type of expansive review of the Legislature’s factual and policy findings that the plurality engages in when undertaking a constitutional rational basis analysis.
I emphasize that I have no reason to question the plurality’s excellent scholarship regarding the flaws in the Legislature’s conclusions as to the existence of a medical malpractice crisis. See plurality op. at 905-10 (Lewis, J.). In my view, however, the rational basis test articulated by this Court, based on precedent from the United States Supreme Court, is a deferential standard. As explained by this Court in Echarte, 618 So.2d at 196, “the Legislature’s factual and policy findings are presumed correct” in a rational basis analysis unless there has been a showing made that the findings are “clearly erroneous.”
The plurality relies on a case, North Florida Women’s Health and Counseling Services, Inc. v. State, 866 So.2d 612, 627 (Fla.2003), involving a fundamental right, for the proposition that “courts must conduct their own inquiry” of the Legislature’s findings. See plurality op. at 906 (Lewis, J.). My primary disagreement with the plurality’s analysis begins with the extensive discussion that questions the “alleged medical malpractice crisis” and relies on North Florida Women’s Health to support the plurality’s review of available data to consider the “factors and circumstances involved.” Plurality op. at 905, 906 (Lewis, J.).
North Florida Women’s Health involved the fundamental right to privacy, which required strict scrutiny review, rather than rational basis review, and in North Florida Women’s Health, a trial court had made findings of fact based on a trial where both parties had the opportunity to present evidence on the underlying issues. See N. Fla. Women’s Health, 866 So.2d at 616. Although the plurality capably demonstrates that the Legislature’s conclusions as to the existence of a medical malpractice crisis may be questionable, I respectfully conclude that there is simply no precedent for this Court to engage in its own independent evaluation and reweighing of the facts and legislative policy findings, as done by the plurality, when conducting a rational basis analysis.
The plurality asserts that Warren v. State Farm Mutual Automobile Insurance Co., 899 So.2d 1090, 1095 (Fla.2005), stands *922 for the proposition that the rational basis test envisions judicial consideration of the existing factors and circumstances to determine whether the legislative findings were fully supported. My review of Warren and the cases on which it relied, however, reveals that this Court has never engaged in the type of expansive, independent review when conducting a rational basis inquiry that the plurality undertakes in this case. Instead, as Warren explained, the rational basis test must be undertaken “in a light deferential to the Legislature’s action.” Warren, 899 So.2d at 1096.
Accordingly, in my view, despite the plurality’s thoughtful and scholarly approach to analyzing the alleged justification for the medical malpractice crisis, there has been no showing made in this case that the Legislature’s findings as to the existence of a crisis at that time were “clearly erroneous.” Echarte, 618 So.2d at 196. I emphasize again, however, that I agree with many aspects of the plurality opinion, particularly the conclusion that the arbitrary reduction of survivors’ noneconomic damages in wrongful death cases based on the number of survivors lacks a rational relationship to the goal of reducing medical malpractice premiums.
IV. Conclusion
Based on the above, I concur with the plurality’s decision to hold the cap on wrongful death noneconomic damages in medical malpractice actions unconstitutional but do not join in all of the plurality opinion’s reasoning.
QUINCE and PERRY, JJ., concur.